**BROTHERHOOD OF LOCOMOTIVE FIREMEN AND ENGINEMEN, a national railway labor organization, Plaintiff,**

v.

**NORTHERN PACIFIC RAILWAY COMPANY, a corporation, Defendant.**

**Civ. No. 3-57-144.**

United States District Court
D. Minnesota,
Third Division.

Jan. 6, 1959.

Richard W. Johnson, of Neville, Johnson & Thompson, Minneapolis, Minn., for plaintiff.

M. L. Countryman, Jr., and Earl F. Requa, St. Paul, Minn., for defendant.

BELL, District Judge.

The issue in this case involves an interpretation of Section 2, Eleventh, of the Railway Labor Act, 45 U.S.C.A. § 152, Eleventh. The pertinent parts of this section read:

" * * * any carrier or carriers as defined in this chapter and a labor organization or labor organizations duly designated and authorized to represent employees in accordance with the requirements of this chapter shall be permitted—

"(a) To make agreements, requiring, as a condition of continued employment, that * * * all employees shall become members of the labor organization representing their craft or class: * * *

"(b) to make agreements providing for the deduction by such carrier or carriers from the wages of its or their employees in a craft or class and payment to the labor organization representing the craft or class of such employees, of any periodic dues, initiation fees, and assessments (not including fines and penalties) uniformly required as a condition of acquiring or retaining membership: *Provided,* That no such agreement shall be effective with respect to any individual employee until he shall have furnished the employer with a written assignment to the labor organization of such membership dues, initiation fees, and assessments, *which shall be revocable in writing after the expiration of one year or upon the termination date of the applicable collective agreement, whichever occurs sooner.*

"(c) The requirement of membership in a labor organization in an

agreement made pursuant to subparagraph (a) of this paragraph shall be satisfied * * * if said employee shall hold or acquire membership in any one of the labor organizations, national in scope, organized in accordance with this chapter and admitting to membership employees of a craft or class in any of said services; *and no agreement made pursuant to subparagraph (b) of this paragraph shall provide for deductions from his wages for periodic dues, initiation fees, or assessments payable to any labor organization other than that in which he holds membership: * * Provided, further, That nothing herein or in any such agreement or agreements shall prevent an employee from changing membership from one organization to another organization admitting to membership employees of a craft or class in any of said services.*" (Emphasis supplied.)

Pursuant to the statutory authority granted by the above provisions of the Railway Labor Act, the Brotherhood of Locomotive Firemen and Enginemen and the Northern Pacific Railway Company entered into a "Union Membership Agreement" dated March 17, 1954. Subsequent thereto and on June 27, 1955, the parties executed a "Dues Deduction Agreement", and it is the difference of opinion concerning the meaning, effect and validity of certain provisions of the latter agreement that has given rise to this lawsuit.

The controversy revolves about the following provisions of the Dues Deduction Agreement:

"Section 1. Subject to the terms and conditions of this agreement, the Carrier shall periodically deduct from the wages of the employes subject to this agreement, who acquire or maintain membership in the Brotherhood, amounts equal to the periodic dues, initiation fees, assessments and insurance premiums (not including fines and penalties) uniformly required as a condition of acquiring or retaining membership in the Brotherhood and shall pay the amount so deducted to the Financial Secretary of each Local Lodge of the Brotherhood; provided, however, that this requirement shall not be effective with respect to any individual employe until he shall have furnished the Carrier with a written wage assignment authorization to the Brotherhood of such membership dues, initiation fees, assessments and insurance premiums, *which wage assignment authorization shall be revocable in writing after the expiration of one year from the date of its execution, or upon the termination of this agreement, or upon the termination of the current Agreement between the Northern Pacific Railway Company and the Brotherhood of Locomotive Firemen and Enginemen entitled 'Schedule for Locomotive Firemen and Hostlers', whichever occurs sooner.*" (Emphasis supplied.)

The facts were stipulated by the parties and it is admitted that prior to the expiration of one year, one of the defendant's employees who had previously signed a wage assignment authorization to the Firemen's Union changed his membership from that organization to another labor organization which admitted to membership employees of the same craft or class as plaintiff and that upon being notified of such change, the Railway Company refused to continue to deduct from this employee's earnings monthly dues which the Brotherhood of Locomotive Firemen and Enginemen claimed owing to it.

The statute states:

" * * * That nothing herein or in any such agreement or agreements shall prevent an employee from changing membership from one organization to another organization admitting to membership employees of a craft or class in any of said services; * * *" (45 U.S.C.A. § 152, Eleventh (c)).

The right to change from one organization to another organization admitting to membership employees of the same craft or class is unrestricted in the law. It has long been the privilege of members of the Firemen's organization, for instance, to withdraw from its membership and join the Brotherhood of Locomotive Engineers, and vice versa. Likewise, the custom of Trainmen withdrawing from the Trainmen's organization and joining the Brotherhood of Railroad Conductors, and vice versa, is of long standing. These privileges were preserved by this section of the Act.

Once it is admitted that an employee has the right at any time to change membership from one organization to the other, the provision of the same paragraph of the statute which provides that no dues deduction agreement shall provide for deductions from the employee's wages for periodic dues, etc., payable to any labor organization other than that in which the employee holds membership, comes into play. The Act says:

"* * * and no agreement made pursuant to subparagraph (b) of this paragraph shall provide for deductions from his wages for periodic dues, initiation fees, or assessments payable to any labor organization other than that in which he holds membership. * * *" 45 U.S.C.A. § 152, Eleventh (c).

It is the Court's judgment that had the Railway Company acceded to the request of the Firemen's Union, that it continue to deduct periodic dues from the wages of an employee who no longer was a member of that union, it would be violating the clear and unambiguous provisions of the Railway Labor Act. The provision in subparagraph (b) which states that written assignments to the labor organization of monthly membership dues shall be revocable in writing after the expiration of one year applies only to those members who retain membership in the organization for more than one year. Some members, for various reasons, may not wish to have their union dues deducted from their pay-

checks, and this provision was placed in the law to permit them to revoke such assignments after the expiration of one year. When read in this light, the provisions of subparagraph (c) which state that *nothing herein or in any such agreement or agreements* shall prevent an employee from changing membership and that no agreement shall provide for deduction from wages for periodic dues, etc., payable to any labor organization other than that in which the employee holds membership, are fully consistent and compatible. On the other hand, if the interpretation contended for by counsel for plaintiff is followed, a member would be required to pay dues to two organizations and that would result in an unjust enrichment to the organization which continued to collect dues from an individual after his membership in that organization had been terminated. I hardly think the Congress in passing this Act intended such a result.

While conceding that the question posed by the instant case is one of first impression, counsel for plaintiff cites three cases in which the "Union Shop" amendment was considered.

The cases are: Pennsylvania R. Co. v. Rychlik, 1957, 352 U.S. 480, 77 S.Ct. 421, 1 L.Ed.2d 480, Switchmen's Union of North America v. Southern Pacific Company, 9 Cir., 1958, 253 F.2d 81, and Felter v. Southern Pacific Company, D.C. N.D.Cal.1957, 155 F.Supp. 315 and 9 Cir., 1948, 256 F.2d 429.

The Rychlik case, supra [352 U.S. 480, 77 S.Ct. 422], dealt with an entirely different problem. The question for decision there was whether or not the United Railroad Operating Crafts (UROC), a new competing union, was "national in scope" and "organized in accordance with" the Act and therefore available for alternative membership under the provisions of subparagraph (c) of Section 2, Eleventh. The court held that the new union was not "national in scope" and otherwise did not comply with the Railway Labor Act so as to protect its members from discharge. What was said in that case concerning the meaning

and purpose of Section 2, Eleventh (c) must be read against the background of its facts and should not be considered out of context. However, in that case the court does say that the purpose of Section 2, Eleventh (c) was to prevent compulsory dual unionism. In the case at bar, if plaintiff's interpretation of the Act is accepted, employees who change union membership prior to the expiration of one year would be required to pay dues to both unions, which would be contrary to the purpose of the law as stated by the court in the Rychlik case.

The Switchmen's Union case, supra, involved the validity of a dues check-off agreement between a *minority* union and the Southern Pacific Company. The Switchmen's Union represented the majority of the yardmen working for the Southern Pacific, and a minority of the yardmen were members of the Trainmen's Union. This is permitted under the Act. The Trainmen's Union entered into a dues checkoff agreement with the Southern Pacific Company covering the yardmen in the Trainmen's Union which provided that the carrier would deduct from their pay their dues owing to the Trainmen's Union and pay them over to that union. The Switchmen's Union, being the collective bargaining representative of all of the yardmen, objected to the Trainmen's dues checkoff agreement, contending that such an agreement is a collective bargaining agreement and that the Trainmen's Union had no authority to enter into such an agreement with the carrier since, under the law, the carrier was obligated to bargain exclusively with the Switchmen's Union as to all matters pertaining to yardmen. The court accepted the position of the Switchmen's Union and held that it was entitled to have the carrier enjoined from deducting from pay of yardmen who had joined the Trainmen's Union the dues of such union. Obviously, this case does not reach our question.

In the Felter cases, supra, plaintiff was a member of the Brotherhood of Railroad Trainmen and employed as a conductor for the Southern Pacific. He executed an assignment form provided by the Trainmen and his dues were regularly deducted. After the passage of more than a year, he joined the Conductors' Union and filled out and signed a form provided by his new union to terminate the authority previously given to the carrier to deduct from his wages his Trainmen's dues. The form supplied by the Conductors' Union was not acceptable to the Brotherhood of Railroad Trainmen so they furnished to Felter another form and requested him to sign same and return it to them so that his name could be removed from their roster. Felter refused to execute and return the form furnished by the Trainmen. Under such circumstances, the court held that his rights were not violated. The case is not in point as the question for decision in the case at bar was not involved.

A statute should be so construed or interpreted as to be consistent within itself.

" * * * A construction of a statute which creates an inconsistency should be avoided when a reasonable interpretation can be adopted which will not do violence to the plain words of the act and will carry out the intention of Congress." 50 Am.Jur., Statutes, Section 363, citing United States v. Raynor, 1937, 302 U.S. 540, 58 S.Ct. 353, 82 L.Ed. 413, rehearing denied in 303 U.S. 665, 58 S.Ct. 520, 82 L.Ed. 1123.

That portion of subparagraph (b) of the Act which provides that written assignments of wages to pay membership dues "shall be revocable in writing *after* the expiration of one year" applies to employees who retain their membership in the union to which the assignment was made. Any other construction would make this provision inconsistent with the provisions of subparagraph (c) which permits the employee to change membership from one organization to another and, in unrestricted terms, prevents the carrier from deducting dues payable to any labor or-

416

ganization other than that in which the employee holds membership.

Counsel for defendant may submit findings of fact, conclusions of law, order for and form of judgment consistent with this opinion.